JOHN S. LEONARDO
United States Attorney
District of Arizona

FRANK T. GALATI
Assistant U.S. Attorney
Arizona State Bar No. 03404
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
frank.galati@usdoj.gov

```
       FILED    ☒ LODGED
       RECEIVED    COPY

       AUG 3 0 2012

       CLERK U S DISTRICT COURT
         DISTRICT OF ARIZONA
       BY_____ DEPUTY
```

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Joseph Christopher Monahan,<br><br>    Defendant. | CR-12-755-02-PHX-ROS<br><br>**PLEA AGREEMENT** |

Plaintiff, United States of America, and the defendant, JOSEPH CHRISTOPHER MONAHAN, hereby agree to dispose of this matter on the following terms and conditions:

**1.   PLEA**

The defendant will plead guilty to **Count 1** of the information charging the defendant with **Conspiracy**, a violation of Title 18 United States Code (U.S.C.) § 371, a Class D felony offense.

**2.   MAXIMUM PENALTIES**

a.   A violation of Title 18 U.S.C. § 371, is punishable by a maximum fine of **$250,000**, a maximum term of imprisonment of **five (5) years,** or both, and a term of supervised release of **three (3) years.** A maximum term of probation is **five years.**

b.   According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1)   make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)   pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4) pay upon conviction a **$100** special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A).

c. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

d. The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if defendant is a recently naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including defendant's attorney or the district court, can predict to a certainty the effect of defendant's conviction on defendant's immigration status in the United States. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is defendant's automatic removal from the United States.

3. **AGREEMENTS REGARDING SENTENCING**

a. <u>No Agreements</u>. There are no agreements regarding the final sentence in the case. The parties are free to make any sentence recommendations to the Court they believe are appropriate.

b. <u>Restitution.</u> Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to make restitution to Hewlitt Packard, in an amount to be determined by the Court at the time of sentencing but in no event more than **$1,845,028.70.** Defendant's restitution obligation shall be joint and several with any other persons ordered to pay restitution for their parts in this conspiracy to defraud.

2

c. <u>Assets.</u> The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures).

d. <u>Acceptance of Responsibility.</u> If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4. AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a. Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States shall dismiss the following charges: **Count 1: Conspiracy and Counts 2-10: Wire Fraud of the Indictment** filed on April 10, 2012 in this case.

b. This office shall not prosecute the defendant for any other offenses committed by the defendant, and known by the United States, in connection with EDI's business with HP, GTF or NETF between 2005 and 2008.

c. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5. COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to

3

prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

6. **WAIVER OF DEFENSES, APPEAL RIGHTS AND STATUTE OF LIMITATIONS**

Providing the defendant's sentence is consistent with this agreement, the defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under Title 18, United States Code, Section 3582(c). The defendant acknowledges that if the Court has sentenced the defendant according to the terms of this agreement, this waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case.

Defendant acknowledges that he has been advised by his attorney and understands that under federal law, as set forth in Title 18, United States Code, § 3282, the statute of limitations for most federal criminal offenses, including the above-referenced Title 18 U.S.C. § 371, is five years from the date on which the crimes were committed, unless there is an agreement by the defendant that charges may be brought after that date. Defendant further acknowledges and understands that, upon the expiration of the applicable limitations period and absent an agreement on defendant's part, he could not be prosecuted for a time-barred federal

criminal offense. Defendant waives the statute of limitations as described herein and gives up any defenses he may have under the statute of limitations.

7. **DISCLOSURE OF INFORMATION**

   a.    The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

   b.    Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

   c.    The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

   (1)    criminal convictions, history of drug abuse, and mental illness; and

   (2)    financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

   Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

9. **ELEMENTS**

   Defendant understands that if this matter were to proceed to trial, the United States would be required to prove each of the following elements beyond a reasonable doubt before the defendant could be found guilty of the offenses to which he is pleading guilty:

   //
   //

## Conspiracy

(1) There was an agreement between two or more persons to commit the offense of wire fraud; and

(2) The defendant became a member of the conspiracy knowing of its object and intending to accomplish it; and

(3) One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy; and

(4) The agreement was either made in Arizona or other acts in support of the conspiracy took place in Arizona.

Defendant further understands that the following are elements of the crime of wire fraud, which defendant conspired to commit:

(1) Within the time period set forth in the Indictment, in the District of Arizona, defendant and others made a scheme or plan for obtaining money or property by making false promises or statements; and

(2) Defendant and others knew that the promises and statements were false; and

(3) The promises or statements were material, that is, they would reasonably influence a person to part with money or property; and

(4) Defendant and others acted with the intent to defraud; and

(5) Defendant and others used, or caused to be used, wire, radio or television communications in interstate or foreign commerce to carry out an essential part of the scheme.

10. **FACTUAL BASIS**

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

KEVIN BUURMA ANGILERI was President of Enterprise Direct, LLC. JOSEPH CHRISTOPHER MONAHAN was Chief Operating Officer of EDI.

Hewlett Packard (hereinafter "HP") was a manufacturer and supplier of computer hardware and software. Global Technology Finance, LLC (hereinafter "GTF") was a company that provided vendor and accounts receivable financing for technology providers. New England

Technology Finance, LLC (hereinafter "NETF") was a single-member limited liability company which was affiliated with GTF and provided financing to EDI.

The term "gray market" signifies the trading of a commodity through distribution channels that are unofficial, unauthorized or unintended by the original manufacturer.

EDI had agreements with suppliers of computer hardware and software, including HP. EDI's agreement with HP allowed EDI to purchase HP products at wholesale prices under certain conditions. One of those conditions was that EDI would only sell HP products to end customers and would not sell HP products to any intermediary or on the "gray market." HP sold most of its products through authorized distributors as well as through authorized partners, such as EDI, rather than directly to end users. EDI became an authorized partner of HP in 2006.

HP's distributors and partners were able to obtain HP products at a slight discount from HP's list price so that they in turn could sell those products for profit to ultimate end users. In order to be able to adjust its prices to address unique circumstances and potentially win additional business, HP developed its "Big Deal" program which authorized substantial discounts to specific end users who agreed to use the products internally and not resell them. Some of the legitimate business reasons HP would provide Big Deal discounts include the opportunity for future large volume sales, further utilization of HP products in the customer's technology infrastructure, and continued maintenance of existing HP products. HP "Big Deals" often involved discounts in the millions of dollars.

HP offered "Big Deal" discounts to its authorized partners who sold HP products to end users. For authorized partners such as EDI to qualify for the "Big Deal" discounts, authorized partners such as EDI must show HP that (a) there is a competitive market for the products, thereby requiring the discount and (b) that the designated end user is purchasing HP products for its own use and will not resell the HP products. When a "Big Deal" was negotiated through an HP distributor or partner, HP had to approve of the discount provided to the end user and then HP paid a rebate to the distributor or partner equal to the amount of the discount.

HP sought to ensure that only legitimate end users received "Big Deal" discounts because the resale of goods purchased under a "Big Deal" harms HP, as well as its distributors, partners

and customers. For that reason, HP would not provide the discount without the representation that the goods would be used internally by the end user.

On or about April 7, 2006, NETF entered into multiple agreements with EDI to provide financing for EDI. JOSEPH CHRISTOPHER MONAHAN signed the agreements on behalf of EDI. It was provided that EDI would solicit end users for sales of computer hardware and software, and GTF, through NETF, would fund the purchases of the computer products. GTF/NETF would then receive the rights to the accounts receivable and pay EDI a servicing fee.

Beginning at least as early as January, 2007 and continuing through on or around June, 2007, in the District of Arizona and elsewhere, KEVIN BUURMA ANGILERI and JOSEPH CHRISTOPHER MONAHAN did knowingly and willfully conspire and agree with each other and with other persons to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that they were false and fraudulent when made, and transmitting and causing to be transmitted certain wire communications in interstate and foreign commerce, for the purpose of executing the scheme.

It was an object of the conspiracy that KEVIN BUURMA ANGILERI and JOSEPH CHRISTOPHER MONAHAN and their coconspirators, through the fraudulent schemes described in this indictment, (a) obtain computer products from HP and funds from GTF and NETF, the entity that financed EDI, and (b) resell the HP products to unauthorized purchasers and receive payment via wire transmissions.

The manner and means employed to effect the object of the conspiracy included the following:

(A) KEVIN BUURMA ANGILERI and JOSEPH CHRISTOPHER MONAHAN, through EDI, arranged for associates to order on behalf of the associates' purported end-user businesses, HP products from EDI.

(B) Invoices were then submitted by the purported end-user businesses to EDI for the ordered HP products.

(C) EDI, through KEVIN BUURMA ANGILERI and JOSEPH CHRISTOPHER MONAHAN, created fraudulent invoices to the purported business for the purported purchase and submitted them to HP to obtain the items ordered by the purported businesses of ANGELIRI's and MONAHAN's associates.

(D) EDI then purchased the HP products with GTF and/or NETF funding.

(E) The products ordered were then either picked up at HP's "will call" or were shipped to addresses controlled by ANGILERI, MONAHAN or their associates.

(F) After the products were received by ANGILERI, MONAHAN or their associates, they were resold to unauthorized end users, in violation of EDI's agreement with HP.

In furtherance of the aforesaid conspiracy, and to effect the objects of the conspiracy, KEVIN BUURMA ANGILERI and JOSEPH CHRISTOPHER MONAHAN and others known and unknown performed and caused to be performed, among others, the following overt acts in the District of Arizona and elsewhere:

a. On or about March 30, 2007, defendants caused invoice 23581 in the amount of $16,309.60 to be issued in the name of Light Speed Computers.

b. On or about April 5, 2007, defendants sold computer products related to invoice 23581 to Arbitech, LLC of Irvine, California.

Through this scheme and artifice to defraud, ANGILERI, MONAHAN and .their co-conspirators defrauded HP of approximately $1,845,000.

The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

**APPROVAL AND ACCEPTANCE OF THE DEFENDANT**

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial

by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

1     I fully understand the terms and conditions of this plea agreement. I am not now using or
2 under the influence of any drug, medication, liquor, or other intoxicant or depressant that would
3 impair my ability to fully understand the terms and conditions of this plea agreement.

08/30/2012
Date

JOSEPH CHRISTOPHER MONAHAN
Defendant

## APPROVAL OF DEFENSE COUNSEL

    I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

8-30-2012
Date

DANA CARPENTER
Attorney for Defendant

//
//
//
//
//

11

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

JOHN S. LEONARDO
United States Attorney
District of Arizona

Date 08/30/12

FRANK T. GALATI
Assistant U.S. Attorney

## ACCEPTANCE BY THE COURT

Date

Hon. ROSLYN O. SILVER
United States District Judge