JOHN S. LEONARDO
United States Attorney
District of Arizona

FRANK T. GALATI
Assistant U.S. Attorney
Arizona State Bar No. 03404
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Frank.Galati@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Joseph Christopher Monahan,<br><br>    Defendant. | CR-12-00755-02-PHX-ROS<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT** |

The United States respectfully files its response to defendant's objections to the presentence report.

**1. Richard Toyser's departure from EDI.** The Information to which Monahan has entered his plea of guilty alleges that "Enterprise Direct, LLC (hereinafter "EDI") was founded in 2005 by Kevin Angileri, Joseph Monahan and a third person who left EDI shortly after its founding." Information, (doc. 32), ¶1. Toyser is that third founder of EDI. Monahan, Angileri and Toyser each has his own version of how and why Toyser left EDI. Because that issue is not germane to the calculation of a Guidelines offense level and, in the view of the United States, is not important to the resolution of any other matters regarding sentencing, we take no position on this objection.

**2. Relevant conduct regarding GTF.** The United States agrees with defendant Monahan that the proper base offense level is 6 (PSR, ¶23) and 16 levels should be added pursuant to Guidelines §2B1.1(b)(1). We take this position because, under the facts of this case, the United

States is not seeking to include in the loss calculation any amounts of loss claimed by GTF or NETF. This is so for the following reasons.

The investigation of this matter was actually begun by HP and that company reported its findings to the FBI and United States Postal Inspection Service. The federal law enforcement agencies investigated two schemes to defraud, one against HP and one against GTF/NETF. The United States sought and the grand jury returned an indictment that alleged substantive counts only in the HP matter. [1] Defendant Monahan was not charged with, nor did he admit as part of the factual basis of his guilty plea, the purloining of funds from GTF.

There are two other salient provisions of the plea agreement that may bear upon this issue: the limiting of restitution to that requested by HP (§3(b)), [2] and the United States Attorney's agreement to "not prosecute the defendant for any other offenses committed by the defendant, and known by the United States, in connection with EDI's business with HP, GTF or NETF between 2005 and 2008." (§4(b)).

This case was charged as it was and the plea agreement has been structured as it is, in part, because the United States sought to bring the leanest, most compelling charges supported by the evidence and to avoid getting bogged down in contract terms, their interpretations or applicability, and with regard to financing, likely defense arguments that these defendants did nothing more than breach EDI's financing agreements with NETF or GTF.

---

[1] Counts 2-10 of the Indictment each charged a wire fraud in violation of Title 18, U.S.C. §1343. Each of those substantive counts involved a wire transfer of funds from EDI's customer Arbitech to EDI. Count 1 charged the conspiracy. It alleged, at ¶ 12, that on behalf of EDI, defendant Monahan signed financing agreements that provided that EDI would solicit end users for sale of computer hardware and software, GTF would fund the purchases and GTF/NETF would receive the accounts receivable and pay EDI a servicing fee. The Indictment also alleged, at ¶15, that an object of the conspiracy was to obtain computer parts from HP and funds from GTF and NETF. None of the 60 overt acts alleged in ¶17 of the Indictment mentions acts involving or defrauding GTF.

[2] While not legally dispositive of the determination of an appropriate loss amount, the United States is aware that NETF has obtained a judgment against Monahan in the Superior Court of Arizona in Maricopa County, case no. CV 2010-017963.

For all these reasons, the United States concurs with defendant's objection and respectfully asks that the Guidelines §2B1.1 loss amount be found to be $1,845,028.70.

**3. Sophisticated means.** The charging documents set forth the means by which this conspiracy was accomplished. Defendant admitted those allegations in the factual basis that is a part of the plea agreement, at 8-9, as follows:

> (A) KEVIN BUURMA ANGILERI and JOSEPH CHRISTOPHER MONAHAN, through EDI, arranged for associates to order on behalf of the associates' purported end-user businesses, HP products from EDI.
> (B) Invoices were then submitted by the purported end-user businesses to EDI for the ordered HP products.
> (C) EDI, through KEVIN BUURMA ANGILERI and JOSEPH CHRISTOPHER MONAHAN, created fraudulent invoices to the purported business for the purported purchase and submitted them to HP to obtain the items ordered by the purported businesses of ANGELIRI's and MONAHAN's associates.
> (D) EDI then purchased the HP products with GTF and/or NETF funding.
> (E) The products ordered were then either picked up at HP's "will call" or were shipped to addresses controlled by ANGILERI, MONAHAN or their associates.
> (F) After the products were received by ANGILERI, MONAHAN or their associates, they were resold to unauthorized end users, in violation of EDI's agreement with HP.

The United States does not seek a sophisticated means enhancement because the above described means do not appear to be "especially complex or especially intricate." Guidelines §2B1.1, application note 8(B). The usual sophisticated means found in white collar financial crimes are those listed in application note 8(B): hiding assets in fictitious entities, corporate shells or offshore accounts. Having items shipped to the co-conspirators or their friends does not appear to be an "especially complex" undertaking.

**4. Abuse of trust.** The United States agrees with the defendant Monahan's objection and, therefore, does not seek a two-level addition pursuant to Guidelines §3B1.3. The presentence report relies upon these facts to support this enhancement: (a) Monahan was COO of EDI; (b) he signed contracts with HP and GTF on behalf of EDI; and (c) he violated the terms of the contracts by engaging in this scheme to defraud.

3

The United States submits that these facts are insufficient to establish the enhancement when measured against the examples of trust relationships that the application note references: embezzlement of a client's funds by an attorney serving as guardian; a bank executive's execution of a fraudulent loan scheme; sexual abuse of a patient by a doctor under the guise of an examination. Guidelines §3B1.3, application note 1. Common to each of these examples is that by virtue of the trust placed in the defendant by the victim, the defendant is in a particularly advantageous position to steal from or otherwise exploit the victim. Here, the relationship of HP and EDI was governed by mutual contractual obligations. It was not a relationship where one party was entrusted with the other's money or property or well-being. While HP had every reason to expect that EDI would live up to its contractual obligations, EDI was not entrusted with anything by HP.

**5. Total offense level calculation.** The United States agrees with the defendant's position and submits that the appropriate total offense level is 19, the correct criminal history category is I and, accordingly, the advisory Guidelines sentencing range is 30-37 months.

Respectfully submitted this 2nd day of November, 2012.

JOHN S. LEONARDO
United States Attorney
District of Arizona

*s/ Frank T. Galati*

FRANK T. GALATI
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant: Dana Carpenter.

*s/ Vicky Manfreda*

4